UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SENTRY SELECT INSURANCE COMPANY,

               Plaintiffs,

       vs.

RUN SMART TRANSPORT INC,
GREENPAC MILL, LLC, RYDER INTEGRATED
LOGISTICS, INC, and AMINTA NUNEZ, as Administrator
of the Estate of RICHARD JOSE GOMEZ,

             Defendants.
_____

**COMPLAINT**

Civil No.:_____

**JURY TRIAL DEMANDED**

Plaintiff, SENTRY SELECT INSURANCE COMPANY ("Sentry"), by and through its attorneys, Hurwitz & Fine, P.C., as and for its Complaint against the Defendants, RUN SMART TRANSPORT INC ("Run Smart"), GREENPAC MILL, LLC ("Greenpac"), RYDER INTEGRATED LOGISTICS, INC ("Ryder") and AMINTA NUNEZ, as Administrator of the Estate of RICHARD JOSE GOMEZ ("Gomez"), alleges, upon information and belief:

## THE PARTIES

1.     Plaintiff, Sentry, is a foreign insurance company organized and existing under the laws of the state of Wisconsin where it is domiciled with its principal place of business in the State of Wisconsin.

2.     Defendant, Run Smart, was, at all relevant times, and still is, a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business in the State of New York, County of Monroe.

3.     Defendant, Greenpac, was, at all relevant times, and still is, a foreign limited liability company organized and existing under the laws of the State of Delaware, with its

1

members, all residents of the State of Delaware.

4.      Defendant, Ryder, was, at all relevant times, and still is, a foreign corporation organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Florida.

5.      Defendant, Gomez, was, at all relevant times, and still is, an individual residing in the State of New York, County of New York.

6.      This matter is an insurance coverage declaratory judgment action seeking judicial resolution as to certain rights and obligations under an insurance policy issued by Sentry to Run Smart.

7.      Defendants, Gomez and Ryder, were included herein as nominal parties so as to afford complete relief to all interested parties.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter under 28 USC §1332 in that it arises between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, insofar as the value of the right being protected and/or the injury being averred exceeds $75,000.

9.      Venue is proper in this district under 28 USC §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

10.     Specifically, Greenpac is alleged to have negligently loaded and packed a certain trailer at one of its facilities located in the State of New York, County of Niagara, which is claimed to have resulted in an automobile accident that culminated in Gomez's injuries and untimely death.

11.     Gomez filed an underlying action regarding the aforementioned automobile accident in New York State Supreme Court, County of Niagara.

## NATURE OF THE ACTION

12.     Aminta Nunez, as Administrator of the Estate of Richard Jose Gomez, commenced an action against Greenpac in the New York State Supreme Court, Niagara County, on March 21, 2019, styled *Aminta Nunez as administrator of the estate of Richard Jose Gomez, Deceased v. Greenpac Mill, LLC*, bearing Index No. E167940/2019 (the "Underlying Action"). A copy of the Complaint in the Underlying Action is incorporated herein by reference.

13.     In the Underlying Action, it is alleged that Gomez was an employee of Run Smart.

14.     In the Underlying Action, it is claimed that Greenpac contracted with Run Smart to transport a trailer which had been loaded and packed by Greenpac employees.

15.     In the Underlying Action, it is alleged that on March 28, 2018, Gomez, while in the course of his employment with Run Smart, was traveling eastbound on Interstate 90 in the Township of Harwick in New Jersey, when he lost control of the truck, flipped over, struck a guardrail and tree and died (the "Accident").

16.     In the Underlying Action, it is claimed that Greenpac employees failed to properly load the trailer, resulting in the accident.

17.     On December 13, 2019, Greenpac commenced a third-party action against Run Smart and Ryder (the "Third-Party Action"). A copy of the Verified Complaint in the Third-Party Action is incorporated herein by reference.

18.     In the Third-Party Action, it is alleged that Gomez was an employee of Run Smart or Ryder when his injuries and death occurred.

19.     The Third-Party Complaint asserts that Run Smart entered into an agreement pursuant to which Run Smart agreed to defend and indemnify Greenpac arising out of work or services being performed by or on behalf of Greenpac.

20.     In the Third-Party Action, Greenpac seeks common law and contractual contribution and indemnity and claims against Run Smart.

21.     Ryder filed a Verified Answer to the Third-Party Complaint on February 12, 2020, asserting counterclaims against Greenpac (the "Ryder Counterclaims") and cross-claims against Run Smart (the "Cross-Claims"). A copy of Ryder's Verified Answer to the Third-Party Complaint is incorporated herein by reference.

22.     In the Ryder Counterclaims, Ryder asserts claims for common law and contractual indemnification against Greenpac.

23.     In its Cross-Claims, Ryder asserts that any recovery against Ryder for its liability was caused by reason of the carelessness and negligence of Run Smart.

24.     Run Smart filed a Verified Answer to the Third-Party Complaint on October 26, 2020, asserting counterclaims against Greenpac (the "Run Smart Counterclaims"). A copy of Run Smart's Verified Answer to the Third-Party Complaint is incorporated herein by reference.

25.     In the Run Smart Counterclaims, Run Smart asserts claims for indemnification and contribution against Greenpac.

## THE SENTRY POLICY

26.     Sentry issued a Motor Vehicle Policy of insurance to Run Smart (Policy No. A 0542300001), that was in effect on the date of the Accident (the "Sentry Policy"). A copy of the Sentry Policy is incorporated herein by reference.

4

27.     Aside from Run Smart, the Sentry Policy does not identify any other named

insured, insureds or additional insured.

28.     The Sentry Policy does not contain any additional insured endorsement.

29.     In pertinent part, the Sentry Policy contains the following provisions in the

Motor Carrier Coverage Form, CA 00 20 10 13:

### SECTION II – COVERED AUTOS LIABILITY COVERAGE

**A.  Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1.  Who Is An Insured**

The following are "insureds":

**a.**  You for any covered "auto".

**b.**  Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

5

**(1)** The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

**(2)** Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

**d.** The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

**e.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

**(1)** Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

    **(a)** If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

    **(b)** If the "motor carrier" is not insured for hired "autos"

under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

However, Paragraph **(1)** above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

**(2)** Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost or expense" occurs while the "trailer" is detached from a covered "auto" you are using and:

**(a)** Is being transported by the carrier; or
**(b)** Is being loaded on or unloaded from any unit of transportation by the carrier.

\* \* \*

**B. Exclusions**

This insurance does not apply to any of the following:

\* \* \*

**2. Contractual**

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or
**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

7

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or
**(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:
**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and
**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

\*\*\*

30.     Under the New York Changes endorsement, CA 01 12 12 15, the definition of "insured contract" is as follows:

"Insured contract" means:

\*\*\*

**g.** That part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization, if a contract or agreement is made prior to the "bodily injury" or "property damage". Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

\*\*\*

    **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

## TENDERS AND DISCLAIMERS

31. By letter, dated August 26, 2020, counsel for Greenpac tendered the complaint in the Third-Party Action to Sentry, seeking additional insured coverage under the Sentry Policy for the claims asserted against it in the Underlying Action.

32. By letter, dated September 21, 2020, Sentry timely disclaimed coverage to Run Smart and Greenpac (the "Disclaimer").

33. In the Disclaimer, Sentry agreed to provide Run Smart with a courtesy defense to the Third-Party Action seeking contractual indemnity, subject to withdrawal of its defense and recoupment of legal fees if the absence of an "insured contract" was judicially determined.

34. Subsequently, by letter, dated February 5, 2021, Sentry issued a supplemental disclaimer of coverage to Run Smart and Greenpac (the "Supplemental Disclaimer").

35. In the Supplemental Disclaimer, Sentry indicated that it had received a copy of the relevant Transportation Brokerage Contract entered between Transportation & Consolidation Services and Run Smart (the "Contract"). A copy of the Contract is incorporated herein by reference.

36. Further, Sentry indicated in the Supplemental Disclaimer that the Contract does not qualify as an insured contract, such that the Sentry Policy does not provide coverage for Greenpac's claims for contractual indemnity in the Third-Party Action.

37.     This declaratory judgment action ensued.

## AS AND FOR A FIRST CAUSE OF ACTION

38.     Sentry repeats and realleges the allegations set forth in the forgoing paragraphs.

39.     The Sentry Policy does not name Greenpac as an insured or additional insured.

40.     The Sentry Policy does not contain any additional insured endorsement.

41.     Thus, Greenpac does not qualify as an insured or additional insured under the Sentry Policy.

42.     Accordingly, Greenpac is not entitled to coverage under the Sentry Policy.

43.     Sentry is entitled to a declaratory judgment that Greenpac is not entitled to defense and/or indemnification under the Sentry Policy for any claims, including those arising out the Underlying Incident and/or asserted in the Underlying Action, Ryder Counterclaims, Run Smart Counterclaims, and/or Cross-Claims.

## AS AND FOR A SECOND CAUSE OF ACTION

44.     Sentry repeats and realleges the allegations set forth in the forgoing paragraphs.

45.     The Sentry Policy contains a contractual liability exclusion that precludes coverage for "[l]iability assumed under any contract or agreement."

46.     The contractual liability exclusion provides an exception for liability "[a]ssumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement."

47.     The Sentry Policy provides that an "insured contract" "does not include that

part of any contract or agreement . . . [t]hat holds a person or organization engaged in the business of transporting property by 'auto' for hire harmless for your use of a covered 'auto' over a route or territory that person or organization is authorized to serve by public authority."

48.     Transportation & Consolidation Services is engaged in the business of transporting property by "auto".

49.     The Contract requires that Run Smart hold Transportation & Consolidation Services harmless for Run Smart's use of a covered 'auto' over a route that Transportation & Consolidation Services is authorized to serve (the "Indemnification Provision").

50.     Thus, the Indemnification Provision of the Contract does not qualify as an "insured contract" under the Sentry Policy.

51.     The Third-Party Action asserts contractual indemnity claims against Run Smart pursuant to the Indemnification Provision of the Contract, which do not qualify as an "insured contract".

52.     Accordingly, the Sentry Policy's contractual liability exclusion precludes coverage for the contractual indemnity claims asserted in the Third-Party Action against Run Smart.

53.     Run Smart and/or Greenpac is not entitled to coverage under the Sentry Policy.

54.     Sentry is entitled to a declaratory judgment that Run Smart and/or Greenpac is not entitled to defense and/or indemnification under the Sentry Policy for any claims arising out of the Underlying Incident and/or asserted in the Underlying Action, Third-Party Action, Ryder Counterclaims, Run Smart Counterclaims, and/or Cross-Claims.

55.     Moreover, Sentry is entitled to a declaration that it may withdraw from the

defense it is currently providing Run Smart in the Third-Party Action.

56.     Furthermore, Sentry is entitled to reimbursement of the fees, costs, and expenses incurred in defending Run Smart in the Third-Party Action.

## AS AND FOR A THIRD CAUSE OF ACTION

57.     Sentry repeats and realleges the allegations set forth in the forgoing paragraphs.

58.     The Sentry Policy contains a workers' compensation exclusion that precludes coverage for "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law."

59.     In the Underlying Action, it is alleged that Gomez was an employee of Run Smart at the time of the Underlying Incident.

60.     In the Underlying Action, it is alleged that Gomez was acting in the scope of his employment for Run Smart at the time of the Underlying Incident.

61.     Thus, Run Smart was obligated to provide workers' compensation benefits to Gomez for injuries sustained in the scope of his employment as a result of the Underlying Incident.

62.     Accordingly, the Sentry Policy's workers' compensation exclusion precludes coverage for claims asserted against Run Smart and/or Greenpac in the Underlying Action, Third-Party Action, Ryder Counterclaims, Run Smart Counterclaims, and/or Cross-Claims.

63.     Run Smart and/or Greenpac is not entitled to coverage under the Sentry Policy.

64.     Sentry is entitled to a declaratory judgment that Run Smart and/or Greenpac is not entitled to defense and/or indemnification under the Sentry Policy for any claims arising out the Underlying Incident and/or asserted in the Underlying Action, Third-Party Action, Ryder Counterclaims, Run Smart Counterclaims, and/or Cross-Claims.

65.     Moreover, Sentry is entitled to a declaration that it may withdraw from the defense it is currently providing Run Smart in the Third-Party Action.

66.     Furthermore, Sentry is entitled to reimbursement of the fees, costs, and expenses incurred in defending Run Smart in the Third-Party Action.

## AS AND FOR A FOURTH CAUSE OF ACTION

67.     Sentry repeats and realleges the allegations set forth in the forgoing paragraphs.

68.     The Sentry Policy contains an employee indemnification and employer's liability exclusion that precludes coverage for "'bodily injury' to an 'employee' of the 'insured' arising out of and in the course of [e]mployment by the 'insured' or [p]erforming the duties related to the conduct of the 'insured's' business."

69.     Further, the employee indemnification and employer's liability exclusion applies "[w]hether the 'insured' may be liable as an employer or in any other capacity and [t]o any obligation to share damages with or repay someone else who must pay damages because of the injury."

70.     In the Underlying Action, it is alleged that Gomez was an employee of Run Smart at the time of the Underlying Incident.

71.     In the Underlying Action, it is alleged that Gomez was acting in the scope of his employment for Run Smart at the time of the Underlying Incident.

72.     Although the employee indemnification and employer's liability exclusion provides an exception for "liability assumed by the 'insured' under an 'insured contract'," the Indemnification Provision of the Contract does not qualify as an "insured contract" under the Sentry Policy.

73.     Accordingly, the Sentry Policy's employee indemnification and employer's liability exclusion precludes coverage for claims asserted against Run Smart and/or Greenpac in the Underlying Action, Third-Party Action, Ryder Counterclaims, Run Smart Counterclaims, and/or Cross-Claims.

74.     Run Smart and/or Greenpac is not entitled to coverage under the Sentry Policy.

75.     Sentry is entitled to a declaratory judgment that Run Smart and/or Greenpac is not entitled to defense and/or indemnification under the Sentry Policy for any claims arising out the Underlying Incident and/or asserted in the Underlying Action, Third-Party Action, Ryder Counterclaims, Run Smart Counterclaims, and/or Cross-Claims.

76.     Moreover, Sentry is entitled to a declaration that it may withdraw from the defense it is currently providing Run Smart in the Third-Party Action.

77.     Furthermore, Sentry is entitled to reimbursement of the fees, costs, and expenses incurred in defending Run Smart in the Third-Party Action.

**WHEREFORE**, Plaintiff, SENTRY SELECT INSURANCE COMPANY, respectfully requests judgment:

(1)     Declaring that GREENPAC MILL, LLC is not an insured or additional insured under the Sentry Policy;

(2)     Declaring that SENTRY SELECT INSURANCE COMPANY is not

14

obligated to defend and/or indemnify RUN SMART TRANSPORT INC or GREENPAC MILL, LLC for the claims arising out of the Underlying Incident and/or asserted in the Underlying Action, Third-Party Action, Ryder Counterclaims, Run Smart Counterclaims, and/or Cross-Claims;

(3)     Declaring that SENTRY SELECT INSURANCE COMPANY is entitled to withdraw from the defense it is currently providing to RUN SMART TRANSPORT INC in the Third-Party Action;

(4)     Requiring RUN SMART TRANSPORT INC to reimburse SENTRY SELECT INSURANCE COMPANY fees, costs, and expenses expended in providing a courtesy defense to RUN SMART TRANSPORT INC in the Third-Party Action;

(5)     Awarding statutory interest, reasonable attorney's fees and costs of suit incurred in bringing this action; and

(6)     Granting any further relief which the Court deems to be just and equitable.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all the issues in this action.

DATED:     Buffalo, New York
           May 13, 2021

HURWITZ & FINE, P.C.

By_____
           Dan D. Kohane, Esq.
           *Attorneys for Plaintiff,*
           *SENTRY SELECT INSURANCE COMPANY*
           1300 Liberty Building
           424 Main Street
           Buffalo, New York 14202
           (716) 849-8900
           ddk@hurwitzfine.com